SHERMAN P. HAWKINS, Petitioner, *v.* ROGER CRIST et al., Respondents.

No. 14095.
Submitted March 17, 1978.
Decided July 20, 1978.
583 P.2d 396.

Sherman P. Hawkins, pro se.

Mike Greely, Atty. Gen., Helena, for respondents.

MR. JUSTICE SHEA delivered the opinion of the Court.

Petitioner, Sherman P. Hawkins, an inmate at Montana State Prison, petitioned this Court for a writ of habeas corpus. Appearing pro se, he alleges that his imprisonment is unlawful because his conviction was procured in violation of his rights guaranteed to him by the United States Constitution.

The background to the petition reveals that on the night of July 20, 1973, petitioner entered the Halfway Club and killed his wife with a single rifle shot through the chest. A number of bar patrons witnessed the killing. Petitioner does not deny the killing.

Shortly after the shooting, petitioner was arrested while driving from the Halfway Club to Billings. The rifle used in the killing was in his possession at the time of arrest. He was charged with first degree murder and convicted by a jury in the Yellowstone County District Court. He received a sentence of life imprisonment. The conviction and sentence were affirmed by this Court in *State v. Hawkins*, (1974) 165 Mont. 456, 529 P.2d 1377.

Petitioner raises three issues for review. First, that his rights as guaranteed under *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, were violated and therefore that evidence was illegally admitted. Second, he contends that the trial court improperly granted the State's motion in limine which pro-

hibited the defendant from impugning the character of his deceased wife unless certain conditions were met. Third, he argues that the prosecution's closing argument to the jury was laced with inflammatory and prejudicial remarks and referred to evidence not part of the record.

We find no merit in defendant's contentions. All of the issues could have been raised during the course of the first appeal, but were not. Nonetheless we will discuss them.

The allegation of violation of his *Miranda* rights arose out of conversations defendant had with police officers after he had been arrested. Yellowstone County sheriff's officers arrested petitioner in his car on the Lockwood interchange, located between the Halfway Club and the City of Billings. The officers immediately told him he was under arrest for investigation of homicide, removed him from his car, and frisked and handcuffed him. Officer Mocabee read the standard *Miranda* warnings to petitioner from a card carried in the officer's wallet. Officers Frank and Ellis confirmed this testimony.

The officers placed petitioner in the rear seat of the sheriff's vehicle. A second officer then tried to get more information from him. Petitioner refused, stating he knew his rights and did not have to talk. However, en route to the jail, petitioner asked Deputy Sheriff Ellis whether his wife was dead or alive. The deputy replied that he did not know and he asked petitioner what happened. Petitioner then described in detail the killing of his wife and the events leading up to the killing.

Upon arrival at the county jail, Deputy Sheriff Ellis asked petitioner whether he understood his constitutional rights. Petitioner responded that he did and asked to call his attorney. Following this phone call, petitioner made additional statements concerning the killing of his wife.

At the conclusion of a suppression hearing, the District Court suppressed all admissions, statements or confessions which petitioner had made to the officers after he had consulted with an attorney by phone. However, the Court also ruled that the police

adequately advised petitioner of his rights before he made the statements to the sheriff's officers just after his arrest and that the statements were voluntary.

At trial, the arresting officers testified to the statements voluntarily offered by petitioner. But they did not testify to petitioner's full confession given in the vehicle en route to the county jail.

The record shows the officers properly advised petitioner of his rights in compliance with *Miranda*. We also note that the District Court determined that petitioner's statements were voluntary and we find nothing in the record to justify a contrary conclusion. Finally, we note that the full confession given by petitioner was not entered as evidence against him at trial and therefore petitioner was not prejudiced.

Petitioner also alleges he was denied due process when the District Court refused to allow him to call five witnesses who would have supported his contention that it was a "crime of passion" rather than first degree murder. Again, the record does not support this allegation.

The issue arises as a result of the trial court granting the State's motion in limine. During the State's case-in-chief, the prosecution moved for an order prohibiting the defense from impugning the character of the deceased until the defendant laid a proper foundation to show any defects in his wife's character known to the defendant before he shot her. Otherwise, the state contended, the defects could not be shown to have affected defendant's mental ability or mental capacity before the shooting. The motion was directed to the prospective cross-examination of prosecution witnesses and to defendant's own case-in-chief. The District Court granted the motion as to petitioner's case-in-chief, but refused to limit the petitioner's full rights of cross-examination into any aspects of the character and activities of the deceased opened up by the prosecution. Petitioner's counsel did cross-examine prosecution witnesses as to character of the deceased.

During presentation of petitioner's case-in-chief, the prosecution objected to the examination of a defense witness on the basis of the

court's order granting the motion in limine. The Court renewed its ruling that it would require a preliminary showing that petitioner had knowledge of the specific activities of the deceased upon which testimony was offered. Petitioner then made an offer of proof as to this witness and the testimony of four other witnesses who would offer similar testimony. The Court ruled that the testimony of two of the witnesses was admissible without limitation, while the testimony of the remaining witnesses was admissible provided the defendant put in some evidence that he knew of his wife's character defects before he shot her. At that point petitioner's counsel requested a brief recess. Shortly thereafter he returned to court and asked that the remaining witnesses be dismissed. One of the witnesses who was dismissed was not subject to the motion in limine. Petitioner then rested his case.

We fail to see how petitioner can claim error when he voluntarily dismissed two witnesses whose testimony was ruled admissible without limitation. As to the remaining three witnesses the District Court properly ruled they were subject to the motion in limine. Petitioner obviously concluded he could not establish the foundation for the testimony and therefore decided not to call them as witnesses.

The Court's ruling on the motion in limine was necessary to keep the proposed testimony within the bounds of relevancy. Petitioner's counsel recognized the propriety of the motion at the time the prosecution presented it to the Court. Obviously, the only specific acts of petitioner's wife that could be relevant to petitioner's state of mind at the time of the killing, were those acts that he was aware of before the killing.

Petitioner's last claim is that the prosecutor's closing arguments to the jury were inflammatory, prejudicial and referred to evidence not in the record. At no time did petitioner object to the closing arguments. It is well settled that objections to closing arguments, made for the first time on appeal, come too late. *State v. French*, (1975) 166 Mont. 196, 203, 531 P.2d 373.

The petition is accordingly, denied.

MR. CHIEF JUSTICE HASWELL and JUSTICE HARRISON concur.